IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BETHANY NIMAN, et al., | CV 23–79–M–DWM |
| Plaintiffs, | |
| v. | OPINION and ORDER |
| MONTANA UNIVERSITY SYSTEM, et al., | |
| Defendants. | |

Plaintiffs are students and former students who enrolled in professional degree programs at the University of Montana ("UM") and were classified as non-resident students for the purposes of their tuition and fees.  (Doc. 1.)  They claim Defendants—Montana University System, UM, members of the Montana Board of Regents of Higher Education, and two UM registrars—violated their civil rights under 42 U.S.C. §§ 1983 and 1988 by enacting and enforcing an unconstitutional residency policy that denies bona fide residents of Montana in-state tuition at its universities.  (*Id*.)  Defendants seek to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiffs lack standing, the Complaint fails to state a plausible claim for relief, and Defendants are immune.  (Doc. 4).  Oral argument was held on February 13, 2024.  (*See* Doc. 19.)  Defendants' motion is granted in part and denied in part.

LEGAL STANDARDS

## I.    Rule 12(b)(1)

Where a 12(b)(1) motion to dismiss is based on lack of standing, the reviewing court must defer to the plaintiff's factual allegations and must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotation marks and alteration omitted). If the jurisdictional facts are intertwined with a plaintiff's substantive claim, the district court should "grant the motion to dismiss for lack of jurisdiction only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987). The jurisdictional question and the merits of an action are intertwined where "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## II.   Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation and quotation marks omitted).  The well-pleaded allegations of material fact are taken as true and must be construed in the light most favorable to the non-moving party. *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

The determination of a Rule 12(b)(6) motion is limited to the pleadings except for documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice.  *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001); Fed. R. Civ. P. 12(d).  Here, the analysis considers the facts as alleged in the Complaint, (Doc. 1), and the public documents attached to Defendants' Motion to Dismiss, (Docs. 5-1 and 5-2), and Plaintiffs' Response, (Docs. 8-1 through 8-7).  *See United States v. Corinthian Colleges*, 655 F. 3d 984, 999 (9th Cir. 2011).

BACKGROUND

Montana Board of Regents of Higher Education Residency Policy 940.1 (the "Policy") prescribes the procedure for determining the in-state or out-of-state classification of applicants for admission at the campuses of the Montana University System.  (*See* Doc. 5-1 at 2.)  Generally, students may only be classified as in-state after providing documentation that they have been domiciled in

Montana for at least 12 consecutive months. (*Id*.) "Domicile requires both physical presence and evidence of intent to stay," and "[e]vidence of intent to stay includes relinquishing all valid legal ties with a former state of residence and affirmatively creating legal ties and relationships with Montana." (*Id*.)

Section I(C) of the Policy requires specific legal ties to Montana that students must establish at least 12 consecutive months before the term for which they are seeking in-state status. Meeting these requirements can include registering a motor vehicle in Montana, getting a Montana driver's license, and registering to vote in Montana. (*Id*.) The Policy contains additional requirements for in-state students who claim financial independence from out-of-state income, which requires they receive less than 50% of all income and financial support from out-of-state and pay for "the majority of their expenses (including the cost of attendance and room/board) with their own independent income and resources." (*Id*. at 3.)

When considering evidence for residency classification, the Policy applies several presumptions, one is that an individual cannot establish residency for tuition purposes while registered for more than half of a full-time credit load. (*Id*. at 3–4.) "A presumption can be overcome with clear and convincing evidence, which is evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." (*Id*. at 4.) A student

4

classified as a non-resident remains a non-resident unless the student petitions for reclassification. (*Id.* at 6.) A student adversely affected by the final decision of a campus may appeal the decision to the Commissioner of Higher Education, and the Commissioner's decision may be appealed to the Board of Regents. (*Id.* at 8.) A hearing is not required on appeal. (*Id.*)

The Board revised the Policy on July 11, 2023. (*Id.* at 2.) Under the pre-July 2023 Policy, students admitted to a "professional degree program," defined as a program of law, pharmacy, or physical therapy, were ineligible "for reclassification as an in-state resident and [would] remain classified as an out-of-state student for the duration of the student's enrollment in the professional program."[1] (Doc. 5-2 at 4–5.) Professional degree program students who believed they were wrongly denied in-state status could seek reclassification, but only before the start of their initial term of enrollment or matriculation. (*Id.*)

Under the Policy in effect after July 2023 (the "current Policy"), to be eligible for in-state status, a student admitted to a professional degree program

---

[1] Exceptions to the residency requirement included the following classes of persons: (1) U.S. armed forces members assigned to active duty in Montana and their spouses and dependent children; (2) individuals domiciled and employed full-time in a permanent job in Montana and their spouse and dependent children, provided the primary purpose of the person seeking in-state status for coming to Montana was not educational; (3) certain graduates of Montana high schools; (4) some individuals domiciled in other states who derive more than 50% of their family income from full-time employment in a permanent job in Montana; and (5) resident Montana veterans. (*See* Doc. 5-1 at 5.)

must meet the general residency standards in Section (I)(C), plus they must have

maintained a Montana residence for at least 12 consecutive months prior to the

student's first admitted semester for purposes other than postsecondary education.

(Doc. 5-1 at 4.)  The current Policy specifies that "[i]f the student took more than 7

credits . . . at an institution of higher education during the 12-month period, the

student must prove by clear and convincing evidence that the student has a

Montana residence for reasons other than postsecondary education." (*Id*.)  The

current Policy also expands the enumerated exceptions to the general student

residency requirement.  (*Compare* Doc. 5-1 at 5–6 *with* Doc. 5-2 at 5.)

     With the exception of one Plaintiff, who read the Policy and decided against

applying for reclassification, Plaintiffs claim that, although they were "bona fide"

residents of Montana, they were denied in-state resident status reclassification

based on one or more of the following allegedly unconstitutional requirements in

Defendants' pre-July 2023 Policy: (1) the 12-month waiting period; (2) the pursuit

of a professional degree; (3) the credit load presumption; or (4) financial

dependence on an out-of-state source.  Plaintiffs also claim they were charged out-

of-state tuition disproportionate to the funding provided by Montana taxpayers.

They also assert Defendants "directly violated" their rights to Due Process and

Equal Protection guaranteed by the Fourteenth Amendment.  Plaintiffs want the

excess out-of-state tuition they paid, general damages, interest, costs, and attorney fees, as well as declaratory and injunctive relief.

ANALYSIS

## I.    Standing

To establish Article III standing, a plaintiff must show: (1) an "injury in fact" (2) traceable to the challenged action of the defendant (3) that "can be redressed by a favorable decision." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). "An 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Safer Chemicals, Healthy Fams. v. U.S. E.P.A.*, 943 F.3d 397, 410–11 (9th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560).

Plaintiffs allege that Defendants denied them in-state tuition by imposing an illegal 12-month waiting period, irrebuttable presumptions, and heightened standards of proof. Although not stated explicitly, the Complaint appears to allege violations by Defendants in both their official and individual capacities. (*See* Doc. 1 at ¶¶ 3–10.) Defendants challenge the sufficiency of the Complaint on its face, arguing Plaintiffs each lack standing because Plaintiffs' conclusory allegation that they "at all relevant times, [] were bona fide residents of Montana," (Doc. 8 at 15), is not supported by sufficient facts. Defendants argue that Plaintiffs fail to qualify for in-state tuition even without the challenged portions of the Policy because none

7

have established they came to Montana for any reason other than postsecondary education, and it is clear from the face of the Complaint that most failed to establish even "baseline legal ties" to Montana until long after they started school. Defendants maintain the Complaint fails to raise a right to relief "above the speculative level" and Plaintiffs' claims are neither plausible nor redressable.

Plaintiffs have standing.  Defendants do not dispute that Plaintiffs' alleged injury is "concrete and particularized" but instead focus on the gaps in Plaintiffs' factual allegations to conclude their injury is speculative.  Although Defendants are correct that Plaintiffs have not yet provided conclusive evidence that each was in fact a "bona fide" resident of Montana when they sought reclassification, the question of whether each Plaintiff's unique circumstances should have qualified them for reclassification is material and disputed, *Rosales*, 824 F.2d at 803, and "clearly intertwined" with the merits of Plaintiffs' substantive claim, *Safe Air for Everyone*, 373 F.3d at 1039.  Thus, dismissal of Plaintiffs' claims for lack of standing is not warranted.  Plaintiffs have made sufficient general factual allegations to proceed.

## II.    Failure to State a Claim

"[A] State has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis." *Vlandis v. Kline*, 412 U.S. 441,

8

452–53 (1973).  States may therefore "establish reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates." *Id*. at 453–54.  But a state university's "permanent and irrebuttable presumption of nonresidence" violates due process "because it provides no opportunity for students who applied from out of State to demonstrate that they have become bona fide . . . residents." *Id*. at 451–53.  Thus, "a state violates due process where it creates a university tuition rate scheme that purports to be concerned with residency, but then applies an irrebuttable presumption precluding those 'seeking to meet its test of residency the opportunity to show factors clearly bearing on the issue.'" *Carlson v. Reed*, 249 F.3d 876, 881 (9th Cir. 2001) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 771 (1975)).  While residency must be decided on the "particular facts" of each case, the Supreme Court has recognized the following "relevant criteria" for determining residential status: "year-round residence, voter registration, place of filing tax returns, property ownership, driver's license, car registration, marital status, vacation employment, etc." *Vlandis*, 412 U.S. at 454.  The relevant inquiry is "whether the student came to the State solely to attend school or whether he intends to make the State his home." *Hooban v. Boling*, 503 F.2d 648, 652 (6th Cir. 1974).

To state a claim under § 1983, a plaintiff "must plead that (1) the defendants acted under the color of state law to (2) deprive plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). A person deprives another of a constitutional right "within the meaning of § 1983 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). The plaintiff must prove personal participation in the alleged deprivation of rights as "there is no respondeat superior liability under section 1983." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 867 n.3 (9th Cir. 2003). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiffs assert that Defendants' adoption and enforcement of various provisions of the Policy violate their rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. (Doc. 1 at ¶¶ 2–9.) Defendants argue binding precedent forecloses Plaintiffs' claims.

10

However, Defendants are incorrect.  Plaintiffs need only establish a plausible claim to relief; they have done so here.

### A.  Professional Degree Program Policy Presumption

The Montana presumption is identical to the one at issue in *Vlandis*: "that because a student's legal address was outside the State at the time of his application for admission or at some point during the preceding year, he remains a non-resident for as long as he is a student there."  412 U.S. at 445.  In *Vlandis*, the Supreme Court held that students at state-funded institutions have "a constitutional right to controvert th[e] presumption of nonresidence by presenting evidence they are bona fide residents of [the State]."  *Id*. at 445–46.

Here, Plaintiffs claim the Policy impermissibly prohibits students the opportunity to challenge their residency status at any time after their first admitted semester in a professional degree program.  Without directly saying so, Defendants seem to agree the pre-July 2023 Policy language is problematic, but assert in a footnote that, because the Board of Regents updated the irrebuttable presumption that existed in the previous version of the professional degree program Policy in July, the Policy is no longer unconstitutional and therefore Plaintiffs' claims are moot.  The argument is unpersuasive.  Defendants revised the language of the Policy to permit student applicants living in Montana the opportunity to rebut the credit load presumption by presenting evidence they had been Montana residents

11

prior to applying for professional school for reasons other than postsecondary education.  But the Policy still bars other professional degree program students from controverting their residency classification "while in student status" because the Policy denies students who did not live in Montana for one year prior to their first admitted semester—who are not former residents of Montana who have not abandoned residency or otherwise excepted from the residency requirements under Section (I)(H)—the opportunity to present evidence showing they later became domiciled Montana residents entitled to in-state tuition rates.  *See Vlandis*, 412 U.S. at 452; c*ompare* Doc. 5-2 at 4, Policy §(I)(H), *with* Doc. 5-1 at 4, Policy §(I)(G).  The July revisions do not moot Plaintiffs' claim.

Because the plain language of the professional degree program Policy supports Plaintiffs' claim, Plaintiffs plausibly allege the Policy violates *Vlandis*, and is unconstitutional on its face and as applied to them.

## B.  Credit Load Presumption

The Ninth Circuit has twice considered the constitutionality of a previous but substantively similar Montana University System residency policy.  *See Young v. Crofts*, 162 F. App'x 712 (9th Cir. 2006) (*Young II*) and *D'Angelo v. Crofts*, 294 F. App'x 254 (9th Cir. 2008) (*D'Angelo III*).  Those cases collectively concluded the previous policy's presumption that a student enrolled in more than half of a full credit load resides in Montana predominantly for educational purposes was neither

irrebuttable on its face nor in practice. *See Young v. Crofts*, No. CV 99-42-H-SRT,
at *4 n.3 (D. Mont. Sept. 1, 2001); *D'Angelo III*, 294 F. App'x at 255.

Plaintiffs appear to challenge both the 12-month waiting period and same
credit load presumption in the general residency policy that was at issue in
*D'Angelo III* and *Young*, as well as the specific 12-month residency requirement
and similar credit load presumption applied only to professional degree program
students. Defendants ignore this distinction, and Plaintiffs have neglected to
clarify their position in briefing or at oral argument. However, the Court need not
rely on precedent to dismiss Plaintiffs' facial claims at this stage. The plain text of
both the current and pre-July 2023 versions of the Policy indicates that both credit
load presumptions are rebuttable by a showing of clear and convincing evidence.
(*See* Doc. 5-1 at 4 (pre-July 2023 Policy) §(I)(D)(5)–(6) and (G); Doc. 5-2 at 4
(current Policy) §(I)(E)(4)–(5).) As such, Plaintiffs' facial challenge to the credit
load presumption is dismissed, but Plaintiffs have plausibly alleged that this
presumption may have been irrebuttably applied to them.

### C. Other Claims

As to Plaintiffs' other claims—the 12-month waiting period, financial
dependence on an out-of-state source provision, and a disproportionate out-of-state
tuition scheme—Defendants rely on overgeneralizations and non-precedential
opinions from other jurisdictions or dicta to argue "binding precedent forecloses

[Plaintiffs'] claims."  (Doc. 5 at 15.)  Although the cases cited by Defendants may

provide support for Defendants' positions, they do not foreclose Plaintiffs' claims.

For example, Defendants rely on *Memorial Hospital v. Maricopa County* to

argue that "the United States Supreme Court has consistently upheld durational

requirements of up to one year for in-state tuition at public institutions."  (Doc. 5 at

17 (quoting *Memorial Hospital*, 415 U.S. at 259–60 nn.12, 15).)  But neither

*Memorial Hospital* nor *Vlandis* held that durational requirements of up to one year

are per se constitutional.  To the contrary, *Memorial Hospital* distinguishes the

Supreme Court's analysis in tuition cases from its application to necessity cases,

like *Memorial Hospital*, which involved a challenge to "an Arizona statute

requiring a year's residence in a county as a condition to receiving nonemergency

hospitalization or medical care at the county's expense" on equal protection

grounds.  415 U.S. at 251, 260 n.15.

While *Memorial Hospital* cites *Vlandis*, the cited language likewise does not

hold that all durational residency requirements of up to one year are constitutional

in the tuition context.  *See id*. at 259 n.12.  After determining "standards of due

process require that the State allow [students] the opportunity to present evidence

showing [they are] bona fide resident[s] entitled to the in-state rates," the Supreme

Court merely clarified that its holding should not "be construed to deny a State the

right to impose on a student, as one element in demonstrating bona fide residence,

14

a reasonable durational residency requirement, which can be met while in student status." *Vlandis*, 412 U.S. at 452.

Here, the Policy, on its face, bars professional degree program students who did not live in Montana for one year prior to their first admitted semester, and who are not former residents of Montana who have not relinquished ties to the State or otherwise excepted from the residency requirements under Section (I)(H), from the opportunity to present evidence showing they are bona fide residents entitled to the in-state rates "while in student status." *Id*. Therefore, *Vlandis* cannot be read to unequivocally support Montana's particular 12-month residency requirement.

Accordingly, except for Plaintiffs' facial challenge to the credit load presumption, Plaintiffs' claims survive at this stage.

## III.   Eleventh Amendment Immunity

The Eleventh Amendment prevents recovery against a state or state officials in their official capacity for monetary damages. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). "[A] state university is an arm of the state entitled to Eleventh Amendment immunity." *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007); *Hohman v. Mont. St. Univ.*, 2006 WL 8435703, at *4 (D. Mont. Sept. 28, 2006) (holding the Montana State University "is, quite clearly, an arm of the state" and "not a 'person' subject to suit under § 1983").

15

Plaintiffs make claims against the Montana University System and UM, as well as members of the Board of Regents and university officials acting in both their personal and official capacities. Defendants correctly assert that the Eleventh Amendment bars all claims against the Montana University System and UM because they are arms of the state. Accordingly, those claims are dismissed.

However, state officials are considered "persons" when sued in their official capacity for prospective injunctive relief, *Will v. Mich. Dep't of St. Police*, 491 U.S. 58, 71 n.10 (1989), and may be liable in their individual capacity for damages if their individual actions caused constitutional violations, *Pennhurst*, 465 U.S. at 107–09. Here, Plaintiffs' claims are not barred by the Eleventh Amendment to the extent that the claims are against state officials in their individual capacity. *D'Angelo v. Crofts*, 162 F. App'x 728, 729 (9th Cir. 2006) (*D'Angelo II*). Thus, Plaintiffs' individual capacity claims may proceed so that Plaintiffs can attempt to establish each Defendant "personally played a role, directly or indirectly, in their alleged constitutional violations." *Id*.

## IV.   Qualified Immunity

Government officials performing discretionary functions may be entitled to qualified immunity, "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). In

evaluating claims of qualified immunity, courts ask two questions: "(1) did the officer violate a constitutional right, and (2) was that right clearly established at the time of the events at issue?" *Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022) (internal quotation marks omitted); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (clarifying that the prongs may be addressed in either order). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam) (internal quotation marks omitted). A case directly on point is unnecessary but the constitutional question must be "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Once the plaintiff has alleged violations of a clearly established right, the government official is entitled to qualified immunity only if he or she made a reasonable mistake as to what the law requires. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001). If the court determines an official is entitled to qualified immunity on any asserted § 1983 claims for damages, the court should dismiss those claims prior to discovery. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Anderson*, 483 U.S. at 646 n.6.

The Complaint does not expressly state whether the individual Defendants are being sued in their individual or official capacities; however, the Court presumes that officials are sued in their individual capacities where those officials

17

are named in a complaint, even if the complaint does not explicitly mention the capacity. *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999).

Defendants argue that, to the extent there are individual capacity damages claims against them, they are entitled to qualified immunity because the right was not clearly established and their actions were reasonable. Plaintiffs present a strong argument that "the right to be free from an irrebuttable presumption of non-residency has been clearly established law since *Vlandis* was decided over 30 years ago." *See D'Angelo III*, 294 Fed. Appx. at 256 (Reinhardt, J., dissenting). But whether the right has been clearly established is only one part of the inquiry. Here, the record contains few facts related to the reasonableness of each individual Defendant's involvement, in either authorizing or implementing the challenged Policy broadly or as to any direct or indirect actions they may have taken to cause harm to Plaintiffs. Furthermore, the prior challenges to Montana's policy were addressed by the Ninth Circuit in a manner that challenges the clearly established proposition. Because Defendants have not met their burden to establish they are entitled to qualified immunity at this stage, any such determination will not be made until the facts are further developed. *See D'Angelo II*, 162 F. App'x at 729. At this point, the Court will not dismiss the individual Defendants on qualified immunity grounds.

## V.    Legislative Immunity

"Under the doctrine of legislative immunity, members of Congress and state legislators are entitled to absolute immunity from civil damages for their performance of lawmaking functions." *Jones v. Allison*, 9 F.4th 1136, 1139–40 (9th Cir. 2021); *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998) (recognizing that "[o]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions"). The immunity applies only to actions taken "in the sphere of legitimate legislative activity." *Kaahumanu v. Cnty. of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003). Legislative immunity extends both to suits for damages and suits for prospective relief. *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010).

To assess a government official's asserted defense of legislative immunity, it is necessary to look "to the purpose and effect of the challenged acts when deciding whether they are legislative in nature." *Jones*, 9 F.4th at 1141 (holding state board of corrections executive officials immune for § 1983 claims related to its act of adopting regulations delegated to it by the state constitution); *Bogan*, 523 U.S. at 55 (determining "acts of voting for an ordinance were, in form, quintessentially legislative" because they were "integral steps in the legislative process"). Consistently, it is necessary to consider whether the act in question: (1) involves either ad hoc decision making or policy formulation; (2) applies to a

few people or to the public; (3) is formally legislative in character; and (4) bears the hallmarks of traditional legislation. *Kaahumanu*, 315 F.3d at 1220.

Defendants argue that the individual members of the Board of Regents are entitled to legislative immunity because their acts related to promulgating the Policy were legislative.[2]  Plaintiffs disagree, and argue that the Board is an administrative, not legislative body.  Defendants are correct.

The act of each individual board member voting for the Policy is "quintessentially legislative" as it was an "integral step in the legislative process," *Bogan*, 523 U.S. at 55, and meets all four parts of the test from *Kaahumanu*. Further, similar to the board of corrections officials in *Jones*, the Montana Constitution Article X, § 9 and Montana law delegate plenary power to the Board of Regents to "prescribe tuition rates" and "control . . . all receipts and disbursements of the system."  Mont. Code Ann. §§ 20–25–301(8), –421(1). When the Board enacted the challenged Policy, and revised it in July, it was engaged in formal policymaking for *all* prospective and current Montana University System students.  Thus, Defendants' motion to dismiss Plaintiffs'

---

[2] Defendants concede that Board members were not acting in a quasi-legislative capacity to the extent that Plaintiffs claim they engaged in acts related to supervising staff or personally considering and denying Plaintiffs' applications or appeals for reclassification.  (*See* Doc. 9 at 13.)

claims against individual Board members for actions related to their enactment or revision of the challenged Policy is granted.

## VI.    Leave to Amend

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Lund v. Cowan*, 5 F.4th 964, 973 (9th Cir. 2021). Here, to the extent Defendants' motion is granted, Plaintiffs are not given leave to amend. Amendment would be futile because no set of facts could avoid the legal grounds for dismissing Plaintiffs' claims against the Montana University System and UM under the Eleventh Amendment, individual Board members' entitlement to legislative immunity, or the plain language as to the Policy's facially rebuttable credit load presumptions. Plaintiffs' remaining claims may be factually viable depending on proof that establishes the right to proceed to the merits of their claims.

CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' motion to dismiss (Doc. 4) is GRANTED in PART and DENIED in PART. The motion is GRANTED as follows:

1. Plaintiffs' facial challenge to the Policy's credit load presumptions is DISMISSED for failure to state a claim;

2.  the Montana University System and UM are DISMISSED as defendants in this action under the Eleventh Amendment and the caption is amended accordingly; and

3.  Plaintiffs' claims against individual Board members for enacting and revising the Policy are DISMISSED on legislative immunity grounds.

The motion is otherwise DENIED.

DATED this 23rd day of February, 2024.

_____
Donald W. Molloy, District Judge
United States District Court