IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BETHANY NIMAN, et al., | CV 23–79–M–DWM |
| Plaintiffs, | |
| vs. | OPINION and ORDER |
| CLAYTON CHRISTIAN, et al., | |
| Defendants. | |

Plaintiffs are students and former students who enrolled in professional degree programs at the University of Montana–Missoula ("UM") that were classified as non-resident students for the purposes of their tuition and fees. They have sued the Montana Commissioner of Higher Education Clayton Christian, as well as individual members of the Montana Board of Regents and UM registrars, (collectively, "Defendants"), alleging civil rights violations under 42 U.S.C. §§ 1983 and 1988 based on a residency policy that denies bona fide residents of Montana in-state tuition at its universities. (Doc. 1.) Plaintiffs seek to certify "a class of all professional students charged out-of-state tuition from three[ ]years before the filing of the complaint to the present." (Doc. 27.) Defendants, on the other hand, ask that class certification be denied, arguing that even if Plaintiffs succeed on their claim that Defendants enacted and enforced an unlawful

1

presumption of out-of-state residency status in contravention of *Vlandis v. Kline*, 412 U.S. 441 (1973), the individualized assessment necessary to determine each student's residency prevents class certification.  (Doc. 32).  Because Defendants are correct, class certification is denied.

**BACKGROUND**

## I.     The Residency Policy

Montana Board of Regents of Higher Education Residency Policy 940.1 (the "Policy") prescribes the procedure for determining the in-state or out-of-state classification of applicants for admission at the campuses of the Montana University System.  (*See* Docs. 5-1, 5-2.)  Generally, students may only be classified as in-state after providing documentation that they have been domiciled in Montana for at least 12 consecutive months.  (*See* Doc. 5-1 at 2.)  "Domicile requires both physical presence and evidence of intent to stay," and "[e]vidence of intent to stay includes relinquishing all valid legal ties with a former state of residence and affirmatively creating legal ties and relationships with Montana." (*Id.*)  The Policy requires specific legal ties to Montana that students must establish at least 12 consecutive months before the term for which they are seeking in-state status.  Meeting these requirements can include registering a motor vehicle in Montana, getting a Montana driver's license, and registering to vote in Montana. (*Id.*)  The Policy contains additional requirements for in-state students who claim

2

financial independence from out-of-state income, which requires they receive "less than 50% of all income and financial support from" out-of-state and pay for "the majority of their expenses (including the cost of attendance and room/board) with their own independent income and resources." (*Id.* at 3.)

When considering evidence for residency classification, the Policy applies several presumptions, one is that an individual cannot establish residency for tuition purposes while registered for more than half of a full-time credit load. (*Id.* at 3–4.) "A presumption can be overcome with clear and convincing evidence, which is evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." (*Id.* at 4.) A student classified as a non-resident remains a non-resident unless the student petitions for reclassification. (*Id.* at 6.) A student adversely affected by the final decision of a campus may appeal the decision to the Commissioner of Higher Education, and the Commissioner's decision may be appealed to the Board of Regents. (*Id.* at 8.) A hearing is not required on appeal. (*Id.* at 7, 9.)

Nevertheless, the Policy contains specific provisions governing the classification of professional degree program students—i.e., students enrolled in a program of law, pharmacy, or physical therapy. Prior to July 2023, Rule 940.1(H) provided in relevant part:

> An out-of-state student admitted to a professional degree program is not eligible for reclassification as an in-state resident and shall remain

3

classified as an out-of-state student for the duration of the student's enrollment in the professional degree program. A student classified as out-of-state who maintains the initial classification was in error may only seek reclassification pursuant to the procedures of this policy prior to the start time of the initial term of enrollment or matriculation into the program.

(Doc. 5-2 at 4–5.) This language was amended in July 2023, and now reads:

To be eligible for in-state status, a student admitted to a professional degree program must meet the standards set forth in subsection C-E [described above]. In addition, the student must have maintained a primary residence in Montana for at least 12 consecutive months immediately before the student's first admitted semester. The Montana residence must be for the purposes other than postsecondary education. If the student took more than 7 credits (or more than 8 credits on a block schedule) at an institution of higher education during the 12-month period, the student must prove by clear and convincing evidence that the student has a Montana residence for reasons other than postsecondary education. This subsection does not apply to students who can demonstrate previous Montana residency under this policy and who have not abandoned residency. For the purposes of this section, the term "professional degree program" means a program of law, pharmacy, or physical therapy.

(Doc. 5-1 at 4 (Rule 940.1(G)).) Unless specifically distinguished in context, the above Policies are referred to as the "professional student provisions" below.

## II.    Plaintiffs

Plaintiffs are nine former students of UM that were enrolled in a professional degree program. With the exception of one Plaintiff, who read the Policy and decided against applying for reclassification, Plaintiffs claim that, although they were "bona fide" residents of Montana, they were denied in-state resident status reclassification based on one or more of the following allegedly

unconstitutional requirements in Defendants' pre-July 2023 Policy: (1) the 12-month waiting period; (2) the pursuit of a professional degree; (3) the credit load presumption; or (4) financial dependence on an out-of-state source. Plaintiffs also claim they were charged out-of-state tuition disproportionate to the funding provided by Montana taxpayers. At this point, all nine Plaintiffs have graduated, (*see* Doc. 32-18 at 2), and all but one either live or work outside Montana.

## ANALYSIS

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). To depart from that rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 348–49 (internal quotation marks omitted). Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. "Under Rule 23, a class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b)." *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 (9th Cir. 2023). As the parties seeking class certification, Plaintiffs "must affirmatively demonstrate [their] compliance with [Rule 23]," *Dukes*, 564 U.S. at 350, by a preponderance of the evidence, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022). Plaintiffs must

therefore prove, not simply plead, that their proposed class satisfies the elements of Rule 23. *Dukes*, 564 U.S. at 350.

Here, Plaintiffs seek to certify a plaintiff class consisting of: "[e]ach Montana University System student from June 2020 to the present" who was "[c]lassified as a nonresident" and pursuing "a professional degree in law, pharmacy, or physical therapy." (Doc. 28 at 19.) Defendants argue that certification is not appropriate, challenging Plaintiffs' ability to prove most of the elements of Rule 23(a) or that any of the Rule 23(b) categories applies. Ultimately, Plaintiffs' request for class certification is premised entirely on their position that their challenge to the professional student provisions has merit. Because that does not meet the requirements for class certification under Rule 23, the request for class certification is denied.

## I.     Rule 23(a)

Rule 23(a) requires a plaintiff to show that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." The party seeking certification bears the burden of showing all four factors—referred to as numerosity, commonality, typicality, and adequacy—are met. *Dukes*, 564 U.S. at

345, 349.  While Plaintiffs have shown numerosity, the other three elements are
absent.

### A.    Numerosity

Rule 23(a) first requires a showing that the class is so numerous that the
joinder of each class member is impractical.  Fed. R. Civ. P. 23(a)(1).  While there
is no specific number of class members required, proposed classes of less than
fifteen are generally too small.  *See Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S.
318, 330 (1980).  Here, however, Plaintiffs propose a class of approximately 6,881
students.  (*See* Doc. 28 at 11.)  Defendants do not dispute "that a putative class of
6,681 members is sufficiently numerous to satisfy Rule 23(a)(1)."[1]  (Doc. 33 at 12
n.3.)  Thus, the numerosity requirement is met.

### B.    Commonality and Typicality

"Commonality requires the plaintiff to demonstrate that the class members
have suffered the same injury."  *Dukes*, 564 U.S. at 349–50 (internal quotation
marks omitted).  It is not enough, however, "that they have all suffered a violation
of the same provision of law."  *Id.* at 350.  Rather, "their claims must depend upon
a common contention" that is "of such a nature that it is capable of classwide
resolution—which means that determination of its truth or falsity will resolve an

---

[1] Plaintiffs consistently refer to a total of 6,881 students and Defendants
consistently refer to 6,681 students.  This discrepancy does not affect the
numerosity analysis.

issue that is central to the validity of each one of the claims in one stroke." *Id.* To show typicality, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Consistently, the typicality inquiry asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted). In cases like this, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Dukes*, 564 U.S. at 349 n.5.

Here, Plaintiffs argue that they have commonality because the professional student provisions were enforced against each of them to deny them in-state status. Thus, according to Plaintiffs, there is a common question of fact as to whether each professional student was charged more tuition based on the professional student provisions at issue and common questions of law as to whether "Defendants' advertisement and enforcement of the pre-suit and post-filing versions of Rule 940.1 violates clearly established law." (Doc. 28 at 24–25.) However, as argued by Defendants, Plaintiffs' conception of commonality is exactly the kind found wanting in *Dukes*: "they have all [merely] suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 350. If Plaintiffs prevail, in-state status is

8

not automatic; rather, "each class member must prove that she would have qualified as an in-state student but for the challenged [presumption]." (Doc. 33 at 19.) That would be the case even under Plaintiffs' conceptualization of a residency standard governed entirely by an "intent" to remain. *See* Mont. Code Ann. § 20–25–503(4).

Finally, Plaintiffs' proposed class contains *all* nonresident professional students, not just those that sought reclassification or would have sought reclassification in the absence of the professional student provisions. Plaintiffs struggle to show typicality as they have not shown that in-state tuition was denied to all professional students based solely on the professional student provisions. Nor, as argued by Defendants, do they present any "evidence suggesting how many of the putative class members still live in Montana, applied for reclassification, or took basic steps to sever ties with their old states and establish ties with Montana." (Doc. 33 at 23.)

## C.    Adequacy

Rule 23(a)(4) requires Plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (internal quotation marks omitted).  Defendants challenge only Plaintiffs' ability to show (2), or that they will "prosecute the action vigorously on behalf of the class." *Id.*  Specifically, Defendants argue that Plaintiffs presented themselves as UM students and "bona fide Montana residents" despite having already graduated and accepted jobs in other states, "offered systematically incomplete and—as their depositions would reveal—inaccurate responses," misapprehended the burden of proof for certification, and "failed to precisely define the class's claims." (Doc. 33 at 19.) Given this performance, Defendants argue that permitting Plaintiffs to represent this class "will invite chaos." (*Id.*)  This concern is valid.  As argued by Defendants, Plaintiffs' counsel's inability to get accurate information from the nine named Plaintiffs in this case does not bode well for resolving the residency status of thousands of class members.  Plaintiffs therefore also fail to show adequacy.

## II.    Rule 23(b)

Even if Plaintiffs could meet the requirements under Rule 23(a), Plaintiffs must show that their action is appropriate to certify an injunctive and declaratory class under Rule 23(b)(2) or a damages class under Rule 23(b)(3).  Defendants insist that neither classification is appropriate here because Plaintiffs lack standing to represent an injunctive or declaratory class under Rule 23(b)(2) as every named

plaintiff has graduated and there are too many individualized issues to satisfy Rule 23(b)(3).  Defendants are correct on both fronts.

### A.     Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (internal quotation marks omitted).  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*  "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant" or "when each class member would be entitled to an individualized award of money damages." *Id.* at 360–61.

Here, Plaintiffs argue that certification is appropriate because they seek a judicial declaration that the professional student provisions violate the Due Process

11

and Equal Protection Clauses of the Constitution. In response, Defendants argue

that certification is inappropriate under Rule 23(b)(2) because Plaintiffs lack

standing and primarily seek damages. "In a class action, standing is satisfied if at

least one named plaintiff meets the requirements." *DZ Reserve v. Meta Platforms,*

*Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024) (internal quotation marks omitted).

Importantly, "[a] plaintiff must demonstrate standing separately for each form of

relief sought," and "[a] plaintiff must also demonstrate Article III standing at each

stage of the litigation." *Id.* at 1240 (internal quotation marks and alteration

omitted). Thus, Plaintiffs' contention that the Court already ruled on standing at

the pleadings stage is beside the point for the present motion. "[S]tanding at the

time of class certification must be established by a preponderance of the evidence."

*Id.*

Plaintiffs lack standing to seek injunctive or declaratory relief. To establish

standing for injunctive relief, a "plaintiff must demonstrate that he has suffered or

is threatened with a concrete and particularized legal harm, coupled with a

sufficient likelihood that he will again be wronged in a similar way." *Id.* (internal

quotation marks omitted). The threatened future injury cannot be "conjectural or

hypothetical" but rather must be "certainly impending" to constitute injury in fact.

*In re Zappos.com, Inc.*, 888 F.3d 1020, 1024–25 (9th Cir. 2018). Here, Plaintiffs

have all graduated from their professional degree programs. (*See* Doc. 32-18 at ¶

12

3.)  "It is well-settled that once a student graduates, he no longer has a live case or controversy justifying declaratory or injunctive relief against a school's action or policy." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000).  While Plaintiffs are indeed correct that certification of a class can obviate the need for a named Plaintiffs to maintain standing, *see Sosna v. Iowa*, 419 U.S. 393, 399 (1975), such certification has not yet happened here.  Plaintiffs cannot therefore rely on the independent legal status of such a class. *See id.*

In the absence of injunctive relief, Plaintiffs primarily seek money damages.  Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 364 U.S. at 360–61.  As stated clearly in Plaintiffs' brief in support of class certification, Plaintiffs argue they "paid substantially higher tuition" under the professional student provisions, (Doc. 28 at 8), and they seek "the difference between in- and out-of-state tuition rates for each semester" in damages, (*id.* at 31). This is also reflected the depositions of the named Plaintiffs.  (*See, e.g.*, Doc. 32-2 at 45 (Niman Depo.); Doc. 32-5 at 40 (Bolena Depo.); Doc. 32-8 (Casey Depo.); Doc. 32-10 at 36 (Hagan Depo.).)

Certification is therefore not appropriate under Rule 23(b)(2).

**B.     Rule 23(b)(3)**

13

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." "The commonality and predominance inquiries overlap." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1191 (9th Cir. 2024). While the commonality requirement requires the existence of issues capable of class-wide resolution, *see Dukes*, 564 U.S. at 350, Rule 23(b)(3) "requires that these common questions predominate over individual ones," *White*, 104 F.4th at 1192. "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation and internal quotation marks omitted, alteration in original). Class certification "is inappropriate when individualized questions . . . will overwhelm common ones." *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023) (internal quotation marks omitted).

To determine whether "questions of law or fact common to class members predominate," courts begin "with the elements underlying the cause of action." *Olean*, 31 F.4th at 665 (internal quotation marks omitted). To pursue a claim under § 1983, a plaintiff must show: "(1) that a right secured by the Constitution or

14

laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006) (discussing elements in pleading context). A plaintiff must also show that the defendants' conduct "was both the actual and proximate cause of their claimed deprivation." *Chaudry v. Aragon*, 68 F.4th 1161, 1172 (9th Cir. 2023). Here, Defendants argue that the critical element missing is causation, i.e., proof that the professional student provisions were the cause of class-wide injuries. *See Van Ort v. Est. of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) ("Without proximate cause, there is no section 1983 liability.").

Defendants are correct that certification is not appropriate "because individual issues of causation will predominate over common ones when evaluating whether" putative class members qualify as Montana residents. *White*, 104 F.4th at 1192. "[E]ven if [P]laintiffs demonstrate that there are common questions of law or fact with respect to" the remaining elements of their § 1983 claims, "this does not perforce establish that these questions predominate over individualized questions of causation." *Id.* at 1193–94. Rather, evidence of residency "varies from member to member," *Tyson Foods*, 577 U.S. at 453, and not all out-of-state professional students would qualify as bona fide Montana residents in the absence of the professional student provisions, *see Castillo v. Bank of Am., NA*, 980 F.3d 723, 731 (9th Cir. 2020) (explaining that while

"individualized damages calculations do not defeat predominance," the fact some class members would have no claim at all does).

In response, Plaintiffs once again insist that Defendants forewent a more nuanced assessment of residency by relying solely on the professional student provisions to deny them in-state status in the first place. But Plaintiffs' "waiver" argument ignores the fact that Plaintiff have not shown—nor it is likely that they can ever show—that every single putative class member would have qualified for in-state tuition but-for the professional student provisions. As argued by Defendants, some professional students are not entitled to in-state tuition "no matter the outcome of Plaintiffs' *Vlandis* claim." (Doc. 35 at 11.)

Certification is therefore not appropriate under Rule 23(b)(3).[2]

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Plaintiffs' motion for class certification (Doc. 27) is DENIED and Defendants' motion to deny class certification (Doc. 32) is GRANTED.

DATED this 2nd day of December, 2024.

_____
Donald W. Molloy, District Judge
United States District Court

---

[2] While 23(b)(3) also requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," the lack of predominance makes this analysis unnecessary.

16